UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FRED E. VAN GORDER,

                Petitioner,

         -vs-

M. ALLERD, Acting Superintendent, and
GLENN S. GOORD,

               Respondents.

**DECISION AND ORDER**

No. 01-CV-6538

## INTRODUCTION

Petitioner Fred E. Van Gorder ("Van Gorder") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on one count of attempted first degree rape (N.Y. Penal Law §§ 110.00, 130.35)) and one count of endangering the welfare of a child (N.Y. Penal Law § 260.10(1)). The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(b).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Van Gorder was convicted of attempting to rape a ten-year-old girl. The incident occurred in 1995, but the exact date of the crime is unknown since the victim did not report the matter to the police until December 1997. The victim and her parents alleged that the attempted rape occurred on a Saturday evening during the winter of 1995 while Van Gorder was babysitting for the victim, her younger brother, and her fifteen-year-old cousin. Van Gorder and his wife frequently socialized with the victim's parents.  On the night in question, Van Gorder had volunteered to watch the children so that their parents could go bowling with Van Gorder's wife.

According to the victim, the assault occurred after her younger brother had gone to sleep and while her cousin was using the bathroom. The victim testified that Van Gorder approached her in the living room and told her to take off her clothes. When the victim asked why she had to take off her clothes, Van Gorder repeated his command. When the victim complied, Van Gorder removed his own clothes, climbed on top of her, and attempted to insert his penis into her vagina. Van Gorder told the victim that he was doing this because his wife was "on the rag." He also ordered the victim not to tell anyone about what he was doing to her.

At that point, the victim's cousin walked into the room and discovered Van Gorder, naked, on top of the victim. The cousin picked up the phone to call the police, but Van Gorder jumped off of the victim and grabbed the phone out of her hands. (The victim's cousin would testify at trial that Van Gorder had exposed his penis to her earlier that evening while they were sitting in the living room.) The victim asked her cousin to promise not to tell anyone that Van Gorder tried to rape her because she was afraid of being blamed for what had occurred. Thus, neither one told the victim's parents about the attempted rape when they returned home.

Shortly after the Saturday evening in question, Van Gorder and his family relocated to North Carolina. Although Van Gorder and the victim's parents were friends, he did not tell them that he was moving and did not contact then after he settled in North Carolina. The victim's parents did not hear from Van Gorder until some three years later when, on December 26, 1997, Van Gorder and his wife appeared at their house unexpectedly. When the victim, who then was twelve-years-old, saw Van Gorder standing in the doorway, she ran to her room and stayed there for the rest of the evening. Thinking that this behavior was "really strange," the victim's parents asked her what was wrong. The victim proceeded to tell her parents that Van Gorder had tried to

rape her back in 1995. Her parents took her to the police station the next day, and Van Gorder subsequently was arrested based and charged with attempted first degree rape and endangering the welfare of a child.

At Van Gorder's jury trial, the prosecution called the victim and her cousin, whose testimony is summarized above. The victim's parents testified that until they learned of the incident, they had considered Van Gorder a friend and had never had a falling-out with him. Also, a clinical psychologist testified that, due to fear, guilt and shame, it is not uncommon for child victims of sexual abuse to delay reporting an attack. Van Gorder did not testify and called no witnesses. The jury rendered a verdict convicting Van Gorder of both counts of the indictment on August 31, 1998.  Judge Marks sentenced Van Gorder to five to fifteen years on the attempted rape charge and to one year on the endangerment charge, those sentences to be served concurrently.

Assigned appellate counsel for Van Gorder filed a notice of appeal on September 10, 1998, but did not perfect the appeal until October 23, 2000. In the meantime, on August 7, 2000, Van Gorder filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10 on the grounds that (1) he did not receive from counsel "any information regarding motions, cross-motions, hearings, testimony, reports, or any other documents pertaining" to his case and was not provided "competent, unbiased, fair counsel"; (2) he was prejudiced by the presence of, and actions by, security personnel who were present with him at trial; (3) he was prejudiced by his ill-fitting and shabby attire during trial; (4) he was excluded from pre-trial hearings; (5) he was forced to accept two jurors who allegedly laughed at his appearance during *voir dire*; (6) false evidence was used in order to attempt to coerce a guilty plea from him; and

(7) hearsay evidence was presented to the Grand Jury. *See* Respondent's Appendix of Exhibits ("Resp't App.") at 10 (Docket #15). Judge Marks rendered a decision and order on November 3, 2000, finding that there were "sufficient facts that appear on the record with respect to the claims raised by the defendant's motion to permit adequate review on appeal." *See* Resp't App. at 40 (Docket #15). Because the court found that the claims were appealable, it was required to deny Van Gorder's motion to vacate the judgment. *Id.* (citing N.Y. Crim. Proc. Law § 440.10(2)(b)).[1] Van Gorder sought leave to appeal to the Appellate Division, Fourth Department, but this was denied.

On October 23, 2000, appellate counsel perfected Van Gorder's appeal by filing a brief raising the following issues: (1) the jury verdict was against the weight of the evidence; and (2) the sentence was harsh and excessive. *See* Resp't App. at 13 (Docket #15). The Fourth Department unanimously affirmed Van Gorder's conviction on March 21, 2001. *People v. Van Gorder*, 281 A.D.2d 944, 722 N.Y.S.2d 8 (App. Div. 4th Dept. 2001). The New York Court of Appeals denied leave to appeal on July 2, 2001. *People v. Van Gorder*, 96 N.Y.2d 908, 756 N.E.2d 95 (N.Y. 2001).

On July 17, 2001, Van Gorder filed a motion for an extension of time in which to file a *pro se* supplemental brief on the grounds that he was "under the care of health care staff during the entire period between August 2000 and June 2001" and "did not have access to any of his legal materials during [that] time period." *See* Resp't App. at 62 (Docket #15). Van Gorder

---

[1]    Section 440.10(2)(b) of New York's Criminal Procedure Law provides in relevant part that "the court must deny a motion to vacate the judgment when: (b) [t]he judgement is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal[.]" N.Y. Crim. Proc. Law § 440.10(2)(b).

further asserted that he was unable to obtain his medical file with which to prove that he was physically incapacitated at the time his appellate brief was due. *Id.*  According to Van Gorder, he notified his appellate counsel that he intended to file a *pro se* supplemental brief, but counsel subsequently filed a brief "instead of notifying the court that the appellant had undergone three surgical procedures and had been hospitalized off and on on [*sic*] at least six occasions and would not be able to participate in the appeals process." *Id.* at 63.  The Fourth Department denied Van Gorder's motion as untimely on August 15, 2001. *See* Resp't App. at 102 (Docket #15).

Van Gorder then filed a petition for a federal writ of habeas corpus on September 9, 2001, in the Northern District of New York[2] in which he claimed the following grounds for relief:  (1) he was denied the right to appear before the Grand Jury; (2) the trial court refused to hold a hearing regarding certain "slanderous" allegations in the victim impact statement that was included in the pre-sentence report; (3) trial counsel was ineffective because he "spent 10 minutes 'preparing appellant for trial' while doodling on a pad"; (4) petitioner was prejudiced because he was forced to wear ill-fitting attire at trial; (5) petitioner was prejudiced by having a sheriff's deputy seated at the defense table; (6) the trial judge committed misconduct by allowing the victim's cousin to give "perjured" testimony; (7) the prosecutor committed misconduct by not protecting Van Gorder from improper representation by counsel; (8) the prosecutor made inappropriate comments about Van Gorder's clothing; (9) the prosecutor attempted to coerce a plea using "bogus" evidence; (10) the prosecutor prosecuted petitioner "outside of the time frame for which the Grand Jury had indicted" him; (11) petitioner was denied a fair trial because trial

---

[2] The petition was transferred to this District by order of Magistrate Judge Gary Sharpe dated October 23, 2001.

counsel refused to call his wife as a witness; (12) petitioner was denied due process as a result of all hearings being "held in secret at the bench"; and (13) he was sentencing vindictively for exercising his right to take his case to trial.  *See* Petition at 5-6 (Docket #6). Respondent answered the petition on January 18, 2002, and interposed defenses of non-exhaustion and procedural default. *See* Docket #15.

The action was stayed on July 7, 2003, to allow Van Gorder to return to state court in order to exhaust any unexhausted claims. *See* Docket #62. Van Gorder filed an application for a writ of error *coram nobis* in the Appellate Division, Fourth Department, of New York State Supreme Court on or about March 13, 2003, in which he alleged, among other things, that appellate counsel's representation was not "legally sufficient" because counsel omitted numerous meritorious arguments from the brief on direct appeal and "abuse[d] his authority by filing [the] direct appeal . . . without consulting with appellant; ignoring the appellant[']s medical incapacitation during the perfecting and filing of direct appeal brief." *See* Docket #65. The issues that Van Gorder claims that appellate counsel erroneously omitted appear to be the same issues that Van Gorder raised as independent claims in his initial habeas petition. The Appellate Division denied his *coram nobis* application in a summary order entered May 2, 2003. *People v. Van Gorder*, 305 A.D.2d 1126, 758 N.Y.S.2d 251 (App. Div. 4th Dept. 2003). Van Gorder submitted a letter seeking leave to appeal on May 6, 2003; leave was denied by the New York Court of Appeals on August 14, 2003. *People v. Van Gorder*, 100 N.Y.2d 600, 798 N.E.2d 360, 766 N.Y.S.2d 176 (N.Y. 2003).

Van Gorder filed an amended petition for habeas corpus on August 29, 2003. *See* Docket #65. Prior to filing the amended petition, Van Gorder had submitted numerous motions to this

Court seeking, *inter alia*, copies of state court transcripts, default judgment against respondent, and a change of venue. These motions were denied. On June 28, 2004, the Court denied Van Gorder's motion for a certificate of appealability with respect to these appeals and granted his motion for a stay. *See* Docket #74. Van Gorder subsequently filed another motion for summary judgment and for a preliminary injunction. On December 15, 2004, Van Gorder submitted a motion to lift the stay. *See* Docket #80. There being no opposition from respondent, *see* Docket # 81, the Court ordered the stay lifted. The matter is now fully submitted and ready for decision.

As an initial matter, the Court notes that the amended petition reads more like a reply brief in that Van Gorder addresses the legal arguments made by respondent in opposition to the original petition. *See*, *e.g.*, Amended Petition for Writ of Habeas Corpus, and Memorandum of Law at 1 (Docket #65) ("In the petitioners first claim: Denial of Right to Testify to the Grand Jury . . . the state claims that the criminal defendant does not have a constitutional right to testify before the grand jury in his own defense."). In the amended petition, Van Gorder refers only to his original claims and does nothing more than respond to the arguments made in opposition to these claims. He does not set forth any new claims and, in fact, only couches some of his old habeas claims in the context of ineffective assistance of appellate counsel. However, because Van Gorder is proceeding *pro se*, the Court is obliged to construe his pleadings liberally. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004); *see also Fleming v. United States*, 146 F.3d 88, 90 (2d Cir.1998) (*per curiam*) (holding that a district court must review *pro se* petitions "with a lenient eye, allowing borderline cases to proceed") (quotation omitted). Thus, although the allegations in Van Gorder's amended petition are less than clear, the Court will construe the pleading as asserting that all of the issues raised in it and his original habeas petition

-7-

are allegedly meritorious arguments that appellate counsel failed to raise on direct appeal.[3]  For

the reasons set forth below, Van Gorder's application for habeas relief is denied.

## DISCUSSION

## Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal

habeas review of his conviction must demonstrate that the state court's adjudication of his federal

constitutional claim resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Supreme Court precedent, or resulted in a decision that was

based on an unreasonable factual determination in light of the evidence presented in state court.

*See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

## Merits of the Petition

I.      **Ineffective assistance of appellate counsel**

A.      **Legal standard for reviewing claims of ineffective assistance of appellate
        counsel**

In order to prevail on a claim of ineffective assistance of appellate counsel within the

framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984),

a habeas petitioner must satisfy a two-part test.[4] First, he must show that appellate counsel was

objectively unreasonable in failing to raise a particular issue on appeal. Second, he must prove

---

[3] The only way for Van Gorder to obtain federal review of his claims is to assert them under the guise of an ineffective assistance of appellate counsel claim. This is because all of the independent claims raised in the original habeas petition are either procedurally defaulted or unexhausted. The claims that are unexhausted would be deemed unexhausted but procedurally defaulted because Van Gorder faces an absence of corrective process were he to return to state court and attempt to exhaust them. *See Grey v. Hoke*, 933 F.2d 117, 120-219 (2d Cir. 1991).

[4] Although the *Strickland* test was formulated in the context of evaluating the effectiveness of trial counsel, the same standard applies to claims regarding the performance of appellate counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing, *e.g.*, *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)).

that he was prejudiced by counsel's deficient performance. In other words, a petitioner must show that there was a reasonable probability that his appeal would have been successful had the omitted claims been presented to the state court. *Mayo,* 13 F.3d at 533-34; *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir. 2001).

Appellate counsel need not present every non-frivolous argument that could be made on petitioner's behalf. *Mayo*, 13 F.3d at 533. Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's choices concerning strategy. *Mayo*, 13 F.3d at 533; *see also Jones v. Barnes*, 463 U.S. 745, 754 (1984). Omission of insignificant claims that will likely be unsuccessful does not prejudice a defendant. *See Mayo*, 13 F.3d at 534 ("To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim would have been successful . . . .'") (alteration in original) (quoting *Claudio v. Scully*, 982 F.2d at 803)). The habeas court should not second-guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *Jones*, 463 U.S. at 754; *see also Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998). Thus, a petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo,* 13 F .3d at 533.

It bears noting that the *Strickland* standard is quite deferential, and that a petitioner cannot state a claim of constitutional dimension unless his lawyer's error is so egregious as to be tantamount to a failure to provide even minimal professional representation. Thus, in assessing an ineffective-assistance claim, a habeas court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct

. . ." and must "determine whether, in light of all the circumstances, . . . [counsel's] acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *accord, e.g., Loliscio v. Goord*, 263 F.3d 178, 192 (2d Cir. 2001). Moreover, the reviewing court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

 **B.** **Alleged grounds of ineffectiveness**

  **1.** **Failure to argue denial of notice of right to testify before grand jury**

 Van Gorder faults appellate counsel for failing to argue that he was wrongfully deprived of his right to testify before the grand jury. Van Gorder does not explain how the outcome of the proceedings would have been affected had he been afforded an opportunity to testify before the grand jury. *See People v. Harrison*, 304 A.D.2d 376, 377, 758 N.Y.S.2d 300 (App. Div. 1st Dept. 2003) (counsel's failure to file a timely motion to dismiss the indictment on the basis that defendant was denied his right to testify before the grand jury, standing alone, does not constitute ineffective assistance of counsel; defendant failed to demonstrate how his testimony would have affected the outcome of the proceedings) (citing, *e.g., People v. Williams*, 291 A.D.2d 347, 739 N.Y.S.2d 664 (App. Div. 1st Dept. 2002)). Thus, he cannot show any prejudice as a result of appellate counsel's failure to raise this meritless issue on appeal.

  **2.** **Failure to argue that the trial court sentenced petitioner vindictively for exercising his right to trial and wrongly denied him a hearing regarding allegations in pre-sentence report**

 Under New York law, "[t]he applicable standard of fairness at sentencing hearings is whether the defendant had an opportunity to refute the aggravating factors which might have

negatively influenced the court[.]" *People v. Massman*, 13 A.D.3d 808, 785 N.Y.S.2d 726, 727

(App. Div. 3d Dept. 2004) (quotation and citations omitted); *People v. Perry*, 36 N.Y.2d 114,

365 N.Y.S.2d 518 (N.Y. 1975) ("[N]either the Supreme Court nor this court has ever held, nor

do we now believe, that the full panoply of constitutional rights should be applied to the

sentencing process[.]") (citing *Williams v. New York*, 337 U.S. 241 (1949), *aff'g People v.*

*Williams*, 298 N.Y. 803, 83 N.E.2d 698 (1949)); *see also United States v. Lee*, 818 F.2d 1052,

1056 (2d Cir.1987) (holding that a court is not under a duty to conduct a full-blown evidentiary

hearing in each instance where information in a pre-sentence report is challenged at federal

sentencing, nor does the convicted defendant have an absolute right to demand that kind of

hearing). It was thus within the discretion of the trial court whether or not to hold a hearing on

any matter relevant to Van Gorder's sentence. Here, Van Gorder was given the opportunity to

controvert the facts contained in the pre-sentence report in accordance with applicable law. At

that time, defense counsel informed the court that Van Gorder had advised him that believed that

some of the allegations in the pre-sentence report were "not accurate," namely, the allegations

about Van Gorder's daily marijuana use and certain statements attributed to him by his wife.

However, defense counsel did not request a hearing at the time of sentencing. When given the

opportunity to speak, Van Gorder did not add anything to defense counsel's statements about the

pre-sentence report.

Appellate counsel had no colorable claim to raise in this regard. First of all, had he raised

such a claim, the appellate court would have found it unpreserved based on defense counsel's

failure to request a hearing at the time of sentencing. *See People v. Vazquetell*, 273 A.D.2d 328,

710 N.Y.S.2d 539 (App. Div. 2d Dept. 2000) (holding that where defendant failed to object to

the procedure utilized by the court in determining the amount of restitution at sentencing, his

challenge on appeal was unpreserved for appellate review) (citing N.Y. Crim. Proc. Law §

470.05(2)).[5] Furthermore, there is no indication that the trial court relied on the allegedly

aggravating factors that Van Gorder claims were inaccurately stated in the pre-sentence report.

Rather, the court explained that she was imposing the maximum sentence based upon the

"egregious" nature of Van Gorder's crime. In any event, appellate counsel *did* argue that the

claim was harsh and excessive on the basis that Van Gorder's only prior criminal convictions

were for attempted petit larceny and disorderly conduct. The Court cannot find that Van Gorder

was prejudiced by appellate counsel's failure to raise this claim–one that was wholly lacking in

merit.

Van Gorder also argues that appellate counsel should have raised a vindictive sentencing

argument on direct appeal. According to Van Gorder, vindictiveness is apparent from the record

because the prosecution had initially offered a sentence of one to three years if Van Gorder would

accede to a guilty plea, but the trial court imposed the maximum sentence after trial. Under New

York law, "[t]he mere fact that a sentence imposed after trial is greater than that offered in

connection with plea negotiations is not proof that defendant was punished for asserting his right

to trial[.]" *People v. Chappelle*, 14 A.D.3d 728, 787 N.Y.S.2d 501, 502 (App. Div. 3d Dept.

2005) (quotation and citations omitted). As the New York Court of Appeals has pointed out,

"[g]iven . . . the *quid pro quo* of the bargaining process . . . , it is also to be anticipated that

---

[5] "For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. . . ." N.Y. Crim. Proc. Law § 470.05(2).

sentences handed out after trial may be more severe than those proposed in connection with a plea." *People v. Pena*, 50 N.Y.2d 400, 429 N.Y.S.2d 410, 416 (N.Y. 1980). Since no more than that occurred here, appellate counsel had no basis on which to argue that Van Gorder was sentenced vindictively for taking his case to trial. *See id.*

### 3.   Failure to argue that the trial court committed misconduct by not granting petitioner's request for a new attorney

Van Gorder claims that appellate counsel should have argued the trial court erred in not granting his request for new counsel. The first time that Van Gorder asked the court for a different attorney was just prior to trial commencing. At that time, Van Gorder complained that he only "had ten minutes tops to go over [his] defense." T.135.[6]  Questioning by the trial court revealed that defense counsel had been to see Van Gorder at the jail for purposes of discussing his case fifteen times prior to the start of trial. T.136. When pressed further by the trial court as to why he wanted a new attorney, Van Gorder complained that counsel "was doodling on a pad" during their meetings and did not pay enough attention to him. T.136. Notably, Van Gorder did not provide any other details as to his basis for being dissatisfied. The trial court specifically found that defense counsel was providing competent representation. T.136. In light of those factual findings, the appellate court would not have been likely to overturn the trial court's decision not to order new assigned counsel for Van Gorder. Thus, Van Gorder was not prejudiced by appellate counsel's omission of this claim on appeal.

### 4.   Failure to argue that petitioner was forced to wear ill-fitting civilian clothes during trial

Van Gorder asserts that during the day on which jury selection and part of the trial

---

[6]  Citations to "T.__" refer to the trial transcript.

occurred, his "trial garb, supplied by . . . [his] attorney, consisted of black ragged and torn sneakers with no socks, purple pants two sizes two small, with the zipper missing at the crotch." Docket #65 at 17. At the end of the day, the Court commented to defense counsel, "You will deal with the clothing issue, so I won't have to hear about that tomorrow morning?" T.217. Counsel replied that he would do so. Thus, Van Gorder apparently registered a complaint about his clothing that day, but it was not placed on the record. During the rest of the trial, there were no further objections from Van Gorder or defense counsel regarding Van Gorder's attire.

Van Gorder was not prejudiced by appellate counsel's omission of this issue on direct appeal. First of all, the state appellate court would have dismissed the claim as unpreserved due to the defendant's failure to object. *E.g.*, *People v. Brown*, 259 A.D.2d 985, 688 N.Y.S.2d 861 (App. Div. 4th Dept.1999) (holding that defendant did not preserve for review his contention that he was compelled to wear prison clothing and handcuffs during trial and declining to address claim as a matter of discretion in the interest of justice) (citing N.Y. Crim. Proc. Law §§ 470.05 (2), 470.15(6)(a)). Thus, it would have been futile for appellate counsel to raise this claim on appeal. Furthermore, although a defendant may not be compelled to stand trial in identifiable prison garb, *see Estelle v. Williams*, 425 U.S. 501, 505-06 (1976), a defendant has no right under state or federal law to be provided with any particular type of civilian clothing. Thus, even had the state court overlooked the preservation issue and considered the claim, it most likely would have denied the claim on the merits.

**5.      Failure to argue that the trial court committed misconduct in "forcing" petitioner to accept certain jurors**

Van Gorder asserts that the trial court "released the remainder of the jury pool once there

were two (2) jurors needed, the court selected two (2) final prospective jurors." Amended

Petition at 4 (Docket #65). Van Gorder states that it was "misconduct for the trial judge to stop

the voir dire to instruct the defendant and defense counsel that there were no more jurors and the

[*sic*] counsel should speak to his client because the judge had no intentions of carrying the voir

dire over to another day." *Id.* First of all, this claim has no factual basis in the record; the Court

has reviewed the trial transcript and has found no evidence of this alleged exchange between the

trial judge and defense counsel. Moreover, there was no objection from defense counsel

regarding the jury selection process, so even if appellate counsel had raised any claim regarding

the jury selection process, it would have been deemed unpreserved by the state appellate court.

*See* N.Y. Crim. Proc. Law § 470.05(a).

### 6.      Failure to argue that the prosecutor suborned perjury

Van Gorder argues that an "alleged *assault*, for which the petitioner was never charged

was invented and raised for the first time at trial, by [the victim's cousin]." Amended Petition at

5 (Docket #65) (emphasis supplied). First of all, this witness did not testify that Van Gorder

assaulted her; she merely said that when she tried to call her aunt and uncle after she discovered

Van Gorder attempting to sexually assault her cousin, Van Gorder "grabbed the phone out of

[her] hands." T.190. That was the extent of the testimony about the alleged "assault." Secondly,

appellate counsel had no basis for arguing that the prosecutor knowingly allowed perjured

testimony to be used at Van Gorder's trial. Under New York law, a judgment may be vacated

upon the ground that "*[m]aterial* evidence adduced at a trial resulting in the judgment was false

and was, prior to the entry of the judgment, *known by the prosecutor or by the court to be false*."

N.Y. Crim. Proc. Law § 440.10(1)(c) (emphases supplied). Not only is the evidence about which

Van Gorder complains totally immaterial to his conviction, there is nothing to show that the witness testified falsely, or that the prosecutor knew or should have known of any alleged perjury. This claim is frivolous, and it would have been a poor tactical choice on appellate counsel's part to raise it on direct appeal.

### 7.      Failure to argue prosecutorial misconduct

This claim is not entirely clear, but Van Gorder's primary complaint seems to be that the prosecutor improperly amended the indictment. Based on the Grand Jury testimony, the original indictment alleged that the criminal conduct at issue occurred between January 1 and March 1, 1995. At the end of its case in chief, the prosecution moved for and was granted permission to amend the indictment from January 1 to April 1, 1995. T.246. As the trial court noted, New York law permits such an amendment as long as it "does not change the theory . . . of the prosecution as reflected in the evidence." N.Y. Crim. Proc. Law § 200.70(1).  Though the amended indictment expanded the time frame within which the attempted rape occurred, the theory of the prosecution was unchanged from that in the original indictment. Thus, appellate counsel had no colorable basis on which to object to the amendment of the indictment on direct appeal.

### 8.      Failure argue that petitioner's wife should have been allowed to testify at trial

Van Gorder asserts that he was prejudiced because defense counsel "refused" to allow petitioner's wife to testify with "key" testimony that the victim and her family had  dinner at Van Gorder's house on Easter in 1995 and that the family also was at Van Gorder's house on the evening before Van Gorder left the area to move to North Carolina. *See* Amend. Pet. at 6-7. He claims that appellate counsel should have argued on direct appeal that trial counsel was remiss in

not placing Van Gorder's wife on the stand. However, this was not a winning argument. The first item of alleged testimony was not relevant because it was prior to the attempted rape which occurred in January 1995, a number of months later. As to the second item of alleged testimony, the fact that the victim's parents continued to socialize with Van Gorder was not particularly probative since the victim did not reveal the attempted rape to them until a few years after the incident. Had appellate counsel challenged defense counsel's tactical choice not to put Van Gorder's wife on the stand, the state court likely would have found the claim to be without merit. *See*, *e.g.*, *People v. Smith*, 82 N.Y.2d 731, 602 N.Y.S.2d 322, 323 (N.Y. 1993) ("Counsel's decision not to call a witness, whose testimony he assessed as weak, was a strategic legal decision which does not amount to ineffective assistance of counsel[.]) (citing *People v. Baldi*, 54 N.Y.2d 137, 150-152, 444 N.Y.S.2d 893 (N.Y. 1981)); *People v. Llanos*, 13 A.D.3d 76, 785 N.Y.S.2d 83 (App. Div. 3d Dept. 2004). Thus, Van Gorder was not prejudiced by appellate counsel's failure to raise this non-meritorious claim on direct appeal.

> **9.      Failure to argue that petitioner was improperly excluded from bench conferences**

According to Van Gorder, appellate counsel should have argued that petitioner was denied due process because "all hearings were held in secret at the bench." Contrary to Van Gorder's contention, it appears from the trial transcript that almost all of the colloquies between the court and the lawyers about evidentiary issues and motions were conducted on the record with Van Gorder present. The transcript reveals that there was one sidebar conference where Van Gorder was not present; the judge indicated to him that the reason was because the conference concerned a legal issue, and Van Gorder assented to being absent. T.199.

Under New York law, "[i]n determining whether a defendant has a right to be present during a particular proceeding, an essential factor is the potential for the defendant to meaningfully participate in the subject discussions." *People v. Fabricio*, 3 N.Y.3d 402, 787 N.Y.S.2d 219, 221 (N.Y. 2004) (citations omitted).  Where the sidebar conference focuses on a pure question of law, a defendant does not have the right to be present since as the legal discussion does "not implicate his peculiar factual knowledge or otherwise present the potential for his meaningful participation." *Id.* (citations omitted). Such was the case here. The subject of the sidebar was a purely legal issue–whether the prosecution properly could call a clinical psychologist to testify concerning the syndrome of delayed reporting in child sexual abuse cases. As the appellate court most likely would have found that Van Gorder did not have a right to be present, Van Gorder was not prejudiced by appellate counsel's failure to raise this issue.

### 10.  Failure to raise all of the claims requested by petitioner

Van Gorder asserts that appellate counsel was obligated to raise on direct appeal *every* issue that Van Gorder asked him to assert, regardless of their relative merit. The Supreme Court has held that indigent defendants do not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the [defendant], if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. at 751- 52. The Court in *Jones* noted that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." This culling-out process, "far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (citation omitted).

-18-

After reviewing the trial transcript in its entirety, it is clear that appellate counsel was thoroughly justified in his choice of issues to be presented to the state appellate court. Appellate counsel wrote a lengthy letter to Van Gorder in which he explained that the issues Van Gorder wanted to include were without merit under either state or federal law. Counsel was correct in his assessment of those issues, as this opinion makes abundantly clear. The reasoned, strategic choice to exclude the issues pressed by Van Gorder and focus on the weight-of-the-evidence and sentencing issues in order to maximize Van Gorder's chance of obtaining review in the state's highest court was not objectively unreasonable. Because Van Gorder cannot satisfy the inadequate performance prong of *Strickland*, he cannot show a Sixth Amendment violation concerning his appellate counsel.

### 11.   Failure to argue that petitioner was prejudiced by presence of a sheriff's deputy at trial

Van Gorder claims that appellate counsel was ineffective for failing to argue that he was prejudiced by having a sheriff's deputy seated at the defense table during trial. Under New York law, "[w]hen courtroom security measures are challenged as inherently prejudicial, the question arises whether the security measures presented a risk that the jury's deliberations were infected." *People v. Terry*, 188 A.D.2d 1020, 591 N.Y.S.2d 666 (App. Div. 4th Dept. 2002) (finding no such risk of infection where "presence of deputies in the courtroom, without more, was not inherently prejudicial," and record did not disclose, directly or by inference, that the jury's verdict was affected by the presence of the uniformed deputies) (citing *Holbrook v. Flynn*, 475 U.S. 560, 572 (1986) (holding that presence of uniformed officers during trial is related to state's legitimate interest in maintaining custody during proceedings; four uniformed state troopers sitting behind

petitioner in first spectator row not prejudicial, even though there also were eight security guards and two sheriff deputies in the courtroom)); *People v. Brown*, 136 A.D.2d 1, 13, 525 N.Y.S.2d 618 (App. Div. 2d Dept. 1988); *accord, e.g.*, *People v. Jenkins*, 88 N.Y.2d 948, 647 N.Y.S.2d 157, 158 (N.Y. 1996).

According to the Supreme Court, uniformed security guards in the courtroom are not so inherently prejudicial to the defendant because a reasonable juror could draw a range of inferences from their presence. *Holbrook*, 475 U.S. at 569. For instance, society often takes armed security guards for granted in public places unless their numbers suggest particular concern. *Id.* Thus, at Van Gorder's trial, the jurors reasonably could have inferred that the deputy was there merely to prevent any tense courtroom exchanges from escalating. *See id.*

Although this Court believes it would have been better practice for the trial court to have seated the deputy behind or in close proximity to the defendant, rather than at defense table, matters of security should be within the sound discretion of the trial judge. Moreover, given the precedents discussed above, had appellate counsel claimed on direct appeal that the presence of one uniformed deputy at the defense table was "inherently prejudicial," the state court more than likely would have disagreed. *See, e.g.*, *People v. Terry*; *supra*; *People v. Riley*, 292 A.D.2d 822, 738 N.Y.S.2d 793 (App. Div. 4th Dept. 2002) ("To the extent that defendant contends that the mere presence of security personnel during his trial was prejudicial, we conclude that his contention lacks merit[.]"). Thus, Van Gorder was not prejudiced by appellate counsel's decision not to press this issue on direct appeal.

**12.    Failure to argue that notice of witnesses was not properly given pursuant to N.Y. Crim. Proc. Law § 710.30**

Van Gorder asserts that appellate counsel should have argued that the prosecution erred in not timely serving notice pursuant to N.Y. Crim. Proc. Law § 710.30.[7] Upon defense counsel's motion for a § 710.30 notice, the prosecutor served a blank notice–blank because Van Gorder made *no statements* to the police, and no § 710.30 notice is required regarding statements made by Van Gorder to the complainant or to other civilian witnesses. *See Peopple v. Velez*, 168 A.D.2d 207, 562 N.Y.S.2d 91 (App. Div. 1st Dept. 1990) (holding that § 710.30 does not apply to statements made to civilian witnesses); *People v. Bell*, 161 A.D.2d 772, 556 N.Y.S.2d 118 (App. Div. 2d Dept. 1990) (holding that defendant not entitled to statutory notice of statements allegedly made by him to complainant who was a civilian and not a public servant or acting as an agent of law enforcement authorities). In other words, there were no statements about which the prosecution was required to have given notice. Van Gorder cannot seriously contend that he was prejudiced by the late service of the § 710.30 notice under these circumstances. This claim is frivolous and appellate counsel was correct in not asserting it on direct appeal.

**CONCLUSION**

For the reasons stated above, Fred E. Van Gorder's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Van Gorder has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a

---

[7] "Whenever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion . . . , or (b) testimony regarding an observation [*i.e.*, identification] of the defendant either at the time or place of the commission of the offense . . . , they must serve upon the defendant a notice of such intention . . . ." N.Y. Crim. Proc. Law § 710.30(1).

certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:         September 26, 2005
               Rochester, New York.